Lee Dell WALKER, Plaintiff-Appellant,

v.

William CAHALAN et al.,
Defendants-Appellees.

No. 75–2328.

United States Court of Appeals,
Sixth Circuit.

Argued April 8, 1976.

Decided Oct. 8, 1976.

Rehearing Denied Nov. 5, 1976.

**682**

Peter R. Barbara, Barbara, Ruby & Domol, P.C., Phil Bozzo, Detroit, Mich., for plaintiff-appellant.

George E. Brand, Jr., Herschel P. Fink, Detroit, Mich., for Detroit News.

Rheo C. Marchand, Asst. Pros. Atty., Detroit, Mich., for defendants-appellees.

Before CELEBREZZE, PECK and MILLER,* Circuit Judges.

JOHN W. PECK, Circuit Judge.

The plaintiff, Lee Dell Walker, appeals from the order of the district court granting defendants' Motions for Summary Judgment.

This action for damages had it genesis in plaintiff-appellant's 1954 conviction for the first degree murder of grocery store owner John Drousitious. At trial, Walker's con-

---

* Honorable William E. Miller died April 12, 1976, and did not participate in the decision of this case.

fession was introduced into evidence. On July 12, 1954, appellant was sentenced to life imprisonment. On May 15, 1972, after 18 years of attacks on the conviction in general and the voluntariness of the confession in particular, a judge of the Recorder's Court for the City of Detroit entered an opinion and order granting leave to file a delayed motion for a new trial, granting the motion for a new trial, and remanding appellant to the custody of the Wayne County Sheriff. The Michigan Court of Appeals denied the prosecutor's application for leave to appeal the Recorder's Court's determination, and on December 12, 1972, an order of *nolle prosequi* was entered.

On December 6, 1973, then state Senator Coleman Young introduced a bill in the Michigan legislature which provided for payment to appellant of $25,000 "to partially reimburse Lee Dell Walker . . . for time spent in state prison due to mistake in identity and false testimony." This bill was passed by the state senate, then was sent to the House of Representatives where it was referred to committee. While it was so pending, appellee Cahalan, Wayne County Prosecutor, sent a letter to the house committee, with copies to the press, including appellee newsman Waldmeir. This letter stated, *inter alia*, that:

> "No wrong was done to Lee Dell Walker. There was no false testimony. Lee Dell Walker was justly convicted of a crime that he committed—the murder of John Drousitious. . . . Lee Dell Walker murdered John Drousitious. There is no other conclusion that can be reached by any fair-minded person who reviews the evidence in this case. . . .
>
> "If Lee Dell Walker is to be rewarded with $25,000, give it to him for his persistence. Do not commit the final perversion of stating that a guilty man is innocent."

Appellee Waldmeir wrote a column based almost entirely upon Cahalan's letter, which was published by appellee Detroit News.

In January of 1975, appellant filed a complaint against defendants Cahalan and Waldmeir in Wayne County Circuit Court, and in February 1975 amended this complaint to charge all defendants with defamation, invasion of privacy, state constitutional violations and deprivation of his civil rights. On March 4, 1975, the defendants removed this action to the United States District Court for the Eastern District of Michigan, Southern Division, wherein a series of motions were all decided adversely to plaintiff-appellant.

## I. Federal Claims

The appellant contended in district court and before this court that Cahalan's actions in sending the letter to the legislature and releasing it to the press deprived him of his constitutional right to due process, in violation of 42 U.S.C. § 1983. He also argued that Waldmeir and the Detroit News (the News Defendants) acted as "agents" of the prosecutor and therefore had likewise violated his rights under § 1983. In March of this year, the Supreme Court rendered an opinion, *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), in which it rejected the position that "reputation alone, apart from some more tangible interests . . . is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." In *Paul v. Davis*, the plaintiff's defamation claim was based upon a police official's publication of a list of "active shoplifters," which included plaintiff's name and picture. Plaintiff had been arrested on a shoplifting charge, but that charge was subsequently dismissed. The Supreme Court found that these facts, based upon injury to plaintiff's reputation were insufficient to state a claim under § 1983.

We find *Paul v. Davis* to be controlling in the instant case insofar as plaintiff-appellant's civil rights claims under § 1983 are concerned. The appellant alleges that the "defendants, jointly and in concert, violated [his] right to due process in officially attaching guilt, prior to an opportunity to defend and, thus, are subject to liability pursuant to 42 U.S.C. § 1983." However, we conclude, as in *Paul v. Davis*, that:

"[appellant] cannot assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment. That being the case, [appellees' alleged] defamatory publications, however seriously they may have harmed [appellant's] reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause." 96 S.Ct. at 1166.

## II. State Claims

■ We next consider appellant's contention that the district court erred in deciding his state claims, which appellant contends should have been remanded to state court for resolution. We conclude that the district court correctly determined that it had pendent jurisdiction over the state claims at issue in this case, *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); that the state and federal claims derived "from a common nucleus of operative fact"; and that at the time of the district court's decision it could not be said that the federal "issue tendered by the complaint was either frivolous or so insubstantial as to be beyond the jurisdiction of the district court." *Hagans v. Lavine*, 415 U.S. 528, 539, 94 S.Ct. 1372, 1380, 39 L.Ed.2d 577 (1973). Therefore, we conclude that it was both within the power and discretion of the district court to reach the appellant's state law claims. *U.M.W. v. Gibbs, supra* at 725–26, 86 S.Ct. 1130.

### a. The News Defendants:

■ On appeal, appellant concedes that he is a "public figure" and that therefore the News Defendants enjoy a "qualified immunity" and the "actual malice" standard of *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), is applicable. This constitutional standard requires that plaintiff prove that the News Defendants published with " 'actual malice' —that is with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. at 280, 84 S.Ct. at 726. *Gertz v. Robert Welch, Inc.*, 418 U.S.

323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). This "actual malice" cannot be premised entirely on the language of the article itself. *Greenbelt Co-op Publishing Ass'n v. Bressler*, 398 U.S. 6, 10, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970).

■■ The question before this court is, therefore, whether a genuine issue of fact existed with regard to "actual malice" of the News Defendants. We conclude that the findings of the district court that the pleadings, affidavits and exhibits, read most favorably for plaintiff, lead inevitably to the conclusion that Waldmeir wrote his column relying exclusively upon the prosecutor's letter, that he reasonably relied upon the prosecutor's familiarity with the case, and that neither he nor the Detroit News had any indication that the contents of the letter were in any respect untrue, are not clearly erroneous.

We further conclude that appellees Waldmeir and the Detroit News enjoyed a qualified immunity to report the prosecutor's statement regarding this matter of great public interest, that no genuine issue of fact was raised in the district court as to the "actual malice" of these defendants, and that therefore the district court properly granted summary judgment as to these defendants.

### b. The Prosecutor:

■ The district court found that in writing this letter and publishing it the prosecutor Cahalan was acting within the absolute immunity of his office. Traditionally, a prosecuting attorney has been considered not liable for damages for acts or omissions within the scope of his official duties. *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Kenney v. Fox*, 232 F.2d 288 (6th Cir.), *cert. denied sub nom. Kenney v. Killian*, 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956); *Yaselli v. Goff*, 12 F.2d 396 (2d Cir. 1926); *Bloss v. Williams*, 15 Mich.App. 228, 166 N.W.2d 520 (1968); 1 Harper & James, The Law of Torts §§ 5.22 & 4.3 (1956). The rationale for this absolute immunity is that prosecuting attorneys perform a quasi-judicial function:

"The public interest requires that persons occupying such important positions and so closely identified with the judicial departments of the government should speak and act freely and fearlessly in the discharge of their important official functions . . . ." *Yaselli v. Goff, supra,* 12 F.2d at 406.

However, a prosecuting attorney may also perform functions not quasi-judicial in nature although within the scope of his authority. See, *Imbler v. Pachtman, supra,* at note 33 and accompanying text. Michigan courts have recognized that as to functions more executive in nature a prosecutor may be liable for his actions. *Bloss v. Williams, supra,* 15 Mich.App. at 231–32, 166 N.W.2d 520.

In *Bloss v. Williams,* the court, quoting *Bauers v. Heisel,* 361 F.2d 581, 589 (3rd Cir. 1966), stated that:

"In deciding the question of whether a prosecuting attorney is liable for acts done in his official capacity, we must decide whether his duties are sufficiently judicial as to cloak him with the same immunity afforded judges or are so closely related to those duties of law enforcement officials as to amerce him with potential civil liability . . . ." 15 Mich. App. at 232, 166 N.W.2d at 523.

In the instant case, an order of *nolle prosequi* had been entered as to the murder charge against Lee Dell Walker. Therefore, with nothing currently before the court, we find it difficult to ascribe any judicial or quasi-judicial significance to the prosecutor's letter. Rather, we agree with the district court that sending the letter to the legislature and releasing it to the press was within the scope of the prosecutor's general powers. The good faith of Cahalan in doing so would be a defense, *see, Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), but because a question of fact was raised by the pleadings, appellant should have been afforded an opportunity to prove that the prosecutor acted with malice. Therefore, we reverse the district court's granting of a summary judgment as to the prosecutor's liability under the state charges, and remand for a determination of the absence or presence of malice. In all other respects the Judgment of the District Court is affirmed.