Peter A. REILLY

v.

Edward P. LEONARD, Individually and as Commissioner of the Connecticut State Police, Thomas J. McDonnell, Individually and as an officer of the Connecticut State Police Department.

Civ. No. H–78–43.

United States District Court, D. Connecticut.

Oct. 23, 1978.

Andrew Emery Garson, Fairfield, Conn., for plaintiff.

Albert Zakarian, Day, Berry & Howard, Hartford, Conn., for defendants in their individual capacities.

Frank Rogers, Asst. Atty. Gen., Meriden, Conn., Carl Ajello, Atty. Gen., Hartford, Conn., for defendants in their official capacities.

## RULING ON MOTION TO DISMISS

CLARIE, Chief Judge.

The defendants have moved to dismiss the complaint arguing that this Court lacks subject matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(1), (6). The plaintiff charges that he was deprived of his constitutional rights by the defendant Connecticut State Police officers through their publication of an investigative report which concluded that he was the sole perpetrator of the murder of his mother. The complaint, which is in four counts, seeks one and one-half million dollars in compensatory damages and one-half million dollars in punitive damages.

The first cause of action, which alleges a conspiracy to deprive Reilly of his civil rights, is deficient in that there is no allegation of a racial or other class-based animus,

which is necessary to state a cause of action under either 42 U.S.C. § 1985(2) or 42 U.S.C. § 1985(3). The causes of action which allege violations of 42 U.S.C. § 1983 are legally insufficient because the complaint fails to allege that the defendants deprived Reilly of any right secured by the Constitution or laws of the United States. Since the federal claims require dismissal, the Court declines to exercise pendant jurisdiction over the state law tort claims. Accordingly, the defendants' motion to dismiss the complaint is granted.

### Statement of Facts

In September, 1973 the plaintiff, Peter Reilly, was found guilty, after a jury trial, of the slaying of his mother, Barbara Gibbons, and was sentenced to a term of six to sixteen years' imprisonment. In March, 1976 Reilly was granted a new trial, on the ground of newly discovered evidence. A substitute information was filed on September 2, 1976 and this was subsequently dismissed on November 24, 1976. On November 29, 1976, the Governor of the State of Connecticut requested a reinvestigation of the case which was conducted by the defendant State Police Captain Thomas J. McDonnell at the direction of the defendant State Police Commissioner Edward P. Leonard. A special one man grand jury was then appointed to investigate allegations that crimes or other wrongful police conduct had been committed in the investigation and trial of the aforesaid case. The one-man grand jury report was released on June 1, 1977; it found that "there is not sufficient evidence to warrant the trial of any person at this time in the homicide of Barbara Gibbons" and that "[o]n the basis of the evidence uncovered to date there is no likelihood that a conviction of Peter A. Reilly could result." On November 22, 1977, the dismissal of the substituted information was judicially declared to be "with prejudice," thereby precluding any further trial of Reilly for the murder.

It is significant to note that the plaintiff is not challenging the propriety of his initial arrest or jury trial. Rather, the subject of his complaint is the state police reinvestigation report, which was issued after the plaintiff had been granted a new trial. The report stated in part, that:

". . . physical evidence incomplete though it may be, points to Peter Reilly as the perpetrator of the Barbara Gibbons homicide and eliminates the possibility that the homicide could have been perpetrated prior to his arrival . . . [home] . . .

"The exhaustive reinvestigation of this case has led to the inescapable conclusion that the person who was originally accused, tried and found guilty, is, in fact, the sole perpetrator of the Barbara Gibbons homicide."

Defendant Leonard forwarded McDonnell's report to the Connecticut State's Attorney for Litchfield County, who rejected the conclusions contained therein and chose not to make the report public. The plaintiff alleges that the report was prepared by the defendant McDonnell on September 26, 1977 and that it was made public by the defendant, after the rejection of the report by the Connecticut State's Attorney. The plaintiff also alleges that the defendant Leonard at various times stated publicly that, as far as the State Police were concerned, the Barbara Gibbons case was closed, and that Peter Reilly was guilty of the murder. The complaint charges that both McDonnell and Leonard acted with knowledge of the falsity of these statements or with a reckless disregard for the truth or falsity thereof, and with the specific intention of injuring the plaintiff.

### Jurisdiction

The complaint charges violations of 42 U.S.C. §§ 1985(2), (3), and 1983. The Court therefore has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1343(1) and (3).

### Discussion of the Law

1. *The Conspiracy Claims.*

 On a motion to dismiss the Court must accept as true all factual allegations

of the plaintiff's complaint, *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This Court nevertheless finds that the present complaint fails to allege a conspiracy to deprive the plaintiff of his constitutional rights, in violation of 42 U.S.C. §§ 1985(2) and (3). The Supreme Court has unequivocally ruled that the well-pleaded § 1985(3) [1] complaint must include an allegation that the motive behind the conspiracy was class-based:

> "The language [of 42 U.S.C. § 1985(3)] requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed. 338 (1971).

The present complaint is entirely devoid of any suggestion that the defendants' actions were motivated by a class-based animus, and therefore the § 1985(3) claim must be dismissed.

■ The plaintiff has also claimed a violation of § 1985(2).[2] That statute is in two parts, the first of which is directed at conspiracies whose object is the intimidation of or retaliation against witnesses, parties or jurors in federal court. Since the complaint contains no allegations of any such intimidation or retaliation and since there have been no federal court proceedings, the plaintiff is presumably relying on the second part of § 1985(2). That part of the statute is aimed at conspiracies whose object is to obstruct justice and deny any citizen the equal protection of the law. While the Supreme Court has yet to speak on the issue, the lower federal courts have universally interpreted *Griffin v. Breckenridge, supra,* as mandating that a claim under this second part of § 1985(2) allege a class-based animus. The rationale is that both §§ 1985(3) and 1985(2) are directed toward "the equal protection of the laws," which is the key phrase in the *Griffin* Court's analysis. *Hahn v. Sargent,* 523 F.2d 461, 469 (1st Cir. 1975), *cert. den.* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). *See also Brawer v. Horowitz,* 535 F.2d 830, 840 (3rd Cir. 1976); *Smith v. Yellow Freight System, Inc.,* 536 F.2d 1320, 1323 (10th Cir. 1976); *Bergman v. Stein,* 404 F.Supp. 287, 293 (S.D.N.Y.1975). Having failed to allege a class-based animus on the part of the defendants, the plaintiff has failed to state a cause of action under either § 1985(2) or § 1985(3).

1. That section reads, in pertinent part:
 "(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators. R.S. § 1980."

2. That section provides:
 "(2) If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;"

2. *The § 1983 Claim.*

 Two elements are required to state a claim under 42 U.S.C. § 1983:[3] (1) the defendants acted under color of state law and (2) their action deprived the plaintiff of some right, privilege or immunity secured by the Constitution or laws of the United States. *Powell v. Workmen's Compensation Board of State of New York,* 327 F.2d 131, 136 (2d Cir. 1964); *Bergman v. Stein,* 404 F.Supp. 287, 295 (S.D.N.Y.1975). Since the defendants in the case *sub judice* were acting in their official capacities as State Police officers, there is no question that the first element is satisfied. With respect to the second element, the plaintiff has asserted that the defendants' actions have caused the deprivation of a number of interests. However, none of these interests rises to the level of a federally guaranteed right, and therefore the complaint fails to state a claim under 42 U.S.C. § 1983.

The gravamen of the complaint is that the plaintiff's reputation has been harmed as a result of the public disclosure of the police investigation report and the public statements of the defendant Leonard. The plaintiff claims that his interest in reputation is a "liberty" interest within the protection of the Fourteenth Amendment, and that the defendants' action deprived him of that liberty interest without notice and an opportunity to be heard. Prior to the Supreme Court's decision in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), it appeared to be well established that one's interest in his reputation did constitute a "liberty" interest, which could not be infringed by governmental action without due process. In numerous cases the Supreme Court has alluded to a right to notice and hearing prior to governmental action which tarnishes one's good name. *United States v. Lovett,* 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946); *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951); *Wieman v. Updegraff,* 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); *Cafeteria Workers v. McElroy,* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Perhaps the clearest indication that reputation was encompassed within the Fourteenth Amendment's definition of "liberty" was *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), where the Court stated:

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437, 91 S.Ct. at 510.

 However, the Court in *Paul v. Davis* made a substantial retreat from this broad proposition, and it is now clear that reputation *alone* is not sufficient to activate the Due Process Clause. In that case the local police chief had distributed to merchants a flyer listing the names and containing the pictures of individuals who were identified as "active shoplifters." The plaintiff, whose name and picture appeared on the flyer, had been arrested for shoplifting, but the charges were dismissed shortly after the flyer had been distributed. In response to the plaintiff's argument that his interest in reputation deserved the procedural protections of the Fourteenth Amendment, the Court in a 5–3 decision with one Justice abstaining, ruled:

"The words 'liberty' and 'property' as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law. While we have in a number of our prior cases pointed out the

**3.** That statute reads:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

frequently drastic effect of the 'stigma' which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." 424 U.S. at 701, 96 S.Ct. at 1160–61.

The Court went on to distinguish the line of cases cited above, and noted that in each of those cases the plaintiff was deprived of something more tangible than reputation; in most instances it involved the termination of government employment. The Court held in the *Paul* case that if harm to such a tangible interest was alleged then injury to reputation could be considered as an element of damage; however, an allegation of injury to reputation *alone* was held insufficient to support a § 1983 claim.

 The plaintiff would distinguish the present case from *Paul* by arguing that there is a greater stigma attached to the crime of murder than to shoplifting and that the defendants' statements in the present case were knowingly false and made with malice, rather than merely negligent. Such distinctions are irrelevant to the question of whether an individual has been denied due process. It is the *interest* which has allegedly been infringed, not the relative degree of the infringement or the state of mind of the defendants, that is crucial in determining the scope of the Fourteenth Amendment. Thus, in due process analysis the court is to consider first whether the interest asserted is encompassed within the Fourteenth Amendment's concept of "life, liberty, or property;" it is only if such an interest is involved that the court must then determine whether the procedures employed were adequate. *Ingraham v. Wright*, 430 U.S. 651, 672, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). The Supreme Court has never intimated that the court must, in addition to determining the type of interest involved, weigh the severity of the deprivation or characterize the defendants' intention in order to decide whether the Due Process Clause is applicable.

In a case which is quite similar to the present one, *Paul v. Davis* was interpreted to require the dismissal of a § 1983 claim, where the principal allegation was that the plaintiff had been wrongfully branded a murderer by the defendant state official. *Walker v. Cahalan*, 542 F.2d 681 (6th Cir. 1976), *cert. den.* 430 U.S. 966, 97 S.Ct. 1647, 52 L.Ed.2d 357 (1977). The plaintiff had been convicted of murder and was granted a new trial 18 years later. The state prosecutor, determining that the evidence to convict was no longer available, entered a *nolle prosequi*. Thereafter, a bill was introduced in the state legislature to pay the plaintiff $25,000 to compensate him for the time he spent in prison, because of an erroneous conviction due to mistaken identity and false testimony. The prosecutor sent a letter to the committee considering the bill, with copies to the press, opposing the award on the ground that the plaintiff had in fact been guilty of the murder. In spite of the fact that the label "murderer" would presumably have more serious consequences than that of "shoplifter," the court, with scant discussion, ruled that *Paul v. Davis* was dispositive and dismissed that part of the action relating to the federal claims under § 1983. 542 F.2d 683–84.

The dissent in *Paul v. Davis* demonstrates even more clearly that it is the nature of the interest involved, and not the severity of the harm alleged or the defendant's state of mind, that is controlling. Justice Brennan laments that the effect of the majority holding is to exclude "a person's interest in his good name and reputation from all constitutional protection, *regardless of the character of or necessity for the government's actions.*" 424 U.S. at 714, 96 S.Ct. at 1167 (Brennan, J., dissenting). (emphasis supplied). Justice Brennan further predicts that, after *Paul v. Davis* :

"[N]o due process infirmities would inhere in a statute constituting a commission to conduct *ex parte* trials of individuals, so long as the only official judgment pronounced was limited to the public condemnation and branding of a person as a

298

Communist, a traitor, an 'active murderer,' a homosexual, or any other mark that 'merely' carries social opprobrium." *Id.* at 721, 96 S.Ct. at 1170.

■ The plaintiff cites *McKnight v. Southeastern Pennsylvania Transportation,* 438 F.Supp. 813 (E.D.Pa.1977) as standing for the proposition that an intentional defamation by a state official would state a § 1983 claim. That decision was based on a provision in the Pennsylvania state constitution, which classifies reputation as a fundamental right along with life, liberty and property. The *McKnight* court, relying on the suggestion in *Paul v. Davis* that a given interest would be accorded protection under the Fourteenth Amendment, if the state itself recognized and protected that interest, held that a federal action under § 1983 in Pennsylvania could be grounded in damage to reputation. The court, however, excluded negligent defamations, stating that

"where reputation is recognized as a liberty interest by state law, a civil rights action for deprivation of that interest without due process will only lie if the defamation was intentionally committed." *Id.* at 829. The court thus did not declare that *all* intentional defamations by state officials could be actionable under § 1983; it merely held that *Paul v. Davis* does not prohibit a § 1983 action, if the state has recognized reputation as a fundamental interest. The present plaintiff has not claimed, nor has the Court's research found, that reputation alone is specifically recognized as a fundamental interest in the Connecticut Constitution.[4]

The plaintiff contends that lower court cases subsequent to *Paul v. Davis* have narrowed the scope of that decision. He cites *Application of Jordan,* 439 F.Supp. 199 (S.D. West Va.1977) in support of his theory that

4. It is true that Article I, § 10 of the Connecticut Constitution makes reference to reputation:

"All courts shall be open, and every person, for an injury done to him in his person, property or *reputation,* shall have remedy by due course of law, and right and justice administered without sale, denial or delay." (emphasis added).

Significantly, an almost identical provision appears in the Constitution of Kentucky, the forum state wherein the case of *Paul v. Davis* originated; it reads as follows:

"All courts shall be open, and every person for an injury done him in his lands, goods, person or *reputation,* shall have remedy by due course of law, and right and justice administered without sale, denial or delay." Kentucky Const. Art. I, § 14. (emphasis added).

The United States Supreme Court in *Paul,* in spite of the existence of this state constitutional provision, substantially the same as Connecticut's, held that *reputation alone* was insufficient to state a federal claim under § 1983. Although the Supreme Court in that case made no specific reference to this provision, its existence further buttresses the argument that the mere mention of the word "reputation" in a state's constitution does not render reputation a fundamental interest under state law. Indeed, the *McKnight* court itself conceded that Kentucky does not recognize reputation as a liberty interest. 438 F.Supp. at 828.

The plain language of both state constitutional provisions quoted above reveals that the framers' intention was not to make reputation a fundamental right, but rather to guarantee a right of access to the states' courts. By con-

trast, the *McKnight* court noted that the Pennsylvania Constitution made specific reference to "certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa.Const. Art. 1, § 1. Moreover, the Pennsylvania Supreme Court had held, prior to the *McKnight* decision, that "protection of one's reputation is a fundamental right classified with life, liberty and property." *Moyer v. Phillips,* 462 Pa. 395, 400, 341 A.2d 441, 443 (1975). The mere fact that injury to reputation can be redressed in Connecticut's courts is not sufficient to bring the present case within the *McKnight* rationale, because, as the *Paul* Court noted, virtually every state permits actions for defamation.

Parenthetically the Court notes that it has no need to consider whether the *McKnight* case comports with the Supreme Court's holding in *Paul.* Given the Supreme Court's direct holding that reputation does not come within the Fourteenth Amendment's definition of "liberty," there is considerable doubt that the Court's reference to the fact that certain rights are protected under the Fourteenth Amendment due to their protection under state law was meant to preserve a § 1983 action in federal court for damage to reputation, even in those states whose constitutions recognize reputation as a fundamental interest. In any event, because reputation is not a fundamental interest in Connecticut, the Court need not reach this issue.

damage to reputation is still cognizable under § 1983 in spite of *Paul v. Davis*. In that case the court granted the motion of an unindicted coconspirator to have his name expunged from the indictment, on the ground that the grand jury's authority was limited to indicting or refusing to indict. That case is totally inapposite to the present one. In fact the case was not even brought pursuant to § 1983. The plaintiff there was seeking equitable relief; there was no claim for damages. The case rested on the proper role of a *federal* grand jury; consequently the concerns of federalism expressed by the Supreme Court in *Paul* were absent in that case. Finally, unlike the plaintiff in *Paul* who could bring his defamation suit in state court, Jordan had no other forum in which he could have procured the relief he sought.

The remainder of the plaintiff's citations are readily distinguished from the present case. A number of those cases arose in the context of defamatory remarks being made in the course of the termination of government employment, a situation in which the *Paul* Court explicitly held that due process considerations would attach. *See Huntley v. Community School Board of Brooklyn*, 543 F.2d 979, 968 (2d Cir. 1976), *cert. den.* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977); *Staton v. Mayes*, 552 F.2d 908, 911 (10th Cir. 1977), *cert. den.* 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1978); *Colaizzi v. Walker*, 542 F.2d 969, 974 (7th Cir. 1976), *cert. den.* 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977). In other cases the plaintiffs charged that they had been subjected to a false arrest. *Davis v. Murphy*, 559 F.2d 1098, 1101–02 (7th Cir. 1977); *Collier v. Bachman*, 421 F.Supp. 869 (E.D.Mich. 1976); *Ellenburg v. Shepherd*, 304 F.Supp. 1059, 1062 (D.Tenn.1966), *aff'd* 406 F.Supp. 1331 (6th Cir. 1968), *cert. den.* 393 U.S. 1087, 89 S.Ct. 878, 21 L.Ed.2d 781 (1969). The obvious deprivation of liberty involved in a false arrest was held sufficient to allege a § 1983 claim, and damage to reputation was permitted as an element of the damages recoverable. However, there is no indication in any of these cases that "damage to reputation alone," regardless of the severity of the accusation or the state of the defendant's mind, would state a § 1983 cause of action.

Indeed, contrary to the plaintiff's assertion that the courts have limited the scope of *Paul v. Davis*, the Second Circuit appears to have adopted a more expansive reading of that case than would seem necessary. In *Gentile v. Wallen*, 562 F.2d 193 (2d Cir. 1977), a discharged teacher complained that the school board treasurer had falsely stated to the unemployment office that the teacher had been discharged for misconduct. There, it was at least arguable that the treasurer's communication was made in connection with the teacher's termination from government employment, and therefore actionable under *Paul*. However, the court ruled that since the communication was made after the termination, no § 1983 cause of action would lie. *Id.* at 197–98.

■ Having established that there is no material distinction between the present case and *Paul v. Davis*, the Court finds that the plaintiff's allegation of harm to his reputation is insufficient by itself to allege a cause of action under 42 U.S.C. § 1983.

■ The plaintiff points to a number of other constitutional interests which he claims have also been invaded by the defendants' actions. The first of these is his right to privacy. While that right is nowhere mentioned in the text of the Constitution, the Supreme Court has recognized that protection of certain "zones of privacy" is inherent in the First, Fourth, Fifth, Ninth and Fourteenth Amendments. *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1768, 14 L.Ed.2d 510 (1965); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). It must be recognized, however, that the "right to privacy" is a generic term which encompasses two entirely different interests. First, there is the right to be free from substantive regulation by the government in certain areas of one's life. Second, there is the right to be free from unwarranted and unwanted publicity about one's affairs. It is only the first of these interests that is protected by the Constitu-

tion. The right to be free from unwanted publicity, which is the privacy interest implicated in the present suit, is protected, if at all, by the common law; and because it is not a federal right, a § 1983 action will not lie for its invasion. *Travers v. Paton*, 261 F.Supp. 110, 113–15 (D.Conn.1966); *Felber v. Foote*, 321 F.Supp. 85, 87–89 (D.Conn. 1970). As the Supreme Court has noted, "the protection of a person's *general* right to privacy—his right to be let alone by other people—is, like the protection of his property and of his very life, left largely to the law of the individual States." *Katz v. United States*, 389 U.S. 347, 350–51, 88 S.Ct. 507, 510–11, 19 L.Ed.2d 576 (footnotes omitted).

■ The *constitutional* right to privacy, by contrast, is limited to placing restrictions on the government's power to regulate private conduct in "matters relating to marriage, procreation, contraception, family relationships, and child rearing and education." *Paul v. Davis, supra,* 424 U.S. at 713, 96 S.Ct. at 1166. The Court's ruling on the privacy claim in that case is equally applicable to the case at bar:

> "Respondent's claim is far afield from this line of decisions. He claims constitutional protection against the disclosure of the fact of his arrest on a shoplifting charge. His claim is based, not upon any challenge to the State's ability to restrict his freedom of action in a sphere contended to be 'private,' but instead on a claim that the State may not publicize a record of an official act such as an arrest. None of our substantive privacy decisions hold this or anything like this, and we decline to enlarge them in this manner." *Ibid.*

■ The plaintiff attempts to bring this case within the Supreme Court's privacy decisions by alleging that his ability to marry and raise a family has been impaired by the adverse publicity he has received as a result of the defendants' actions. The plaintiff has not, however, alleged that the state or any of its officers have *directly prevented* him from marrying the person of his choice, *compare Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967),

deciding whether or not to have children, *compare Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), or determining how to raise any children he had, *compare Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). Here the plaintiff's alleged inability to marry and raise a family is a collateral consequence of the publication of the defendants' statements. Publication of defamatory remarks, even where the defendant is alleged to have made the statements with knowledge of their falsity, has been held to be outside the scope of the constitutionally protected right to privacy. *Rosenberg v. Martin*, 478 F.2d 520, 524–25 (2d Cir. 1973); *Baker v. Howard*, 419 F.2d 377, 377 (9th Cir. 1969) *(per curiam)*. The plaintiff therefore has no privacy claim that is cognizable under § 1983.

Another constitutional right which the plaintiff seeks to assert is his First Amendment right to freedom of speech. By arguing that the exercise of his First Amendment rights has been "chilled," the plaintiff seeks to come within the doctrine of *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). The Court in *Dombrowski* countenanced the use of a federal action under § 1983 to challenge the constitutionality of a statute whose enforcement had allegedly chilled the plaintiff's exercise of First Amendment rights. Similarly, the Second Circuit has recently held that the president of a housing association could recover damages for mental and emotional suffering, if she could prove that the defendants' attempt to evict her was motivated by a desire to chill her First Amendment rights. *Davis v. Village Park II Realty Co.*, 578 F.2d 461, 463 (2d Cir. 1978). The present complaint, however, is insufficient to support the allegation of a chill of the right to freedom of speech, because the plaintiff has failed to specify in what particulars his First Amendment rights had been chilled.

■ This Court has previously noted that the civil rights plaintiff bears a special burden of specificity:

> "As a general rule notice pleading is sufficient, but an exception has been created

for cases brought under the Civil Rights Acts. The reason for this exception is clear. In recent years there has been an increasingly large volume of cases brought under the Civil Rights Acts. A substantial number of these cases are frivolous or should be litigated in the state courts; they all cause defendants—public officials, policemen and citizens alike—considerable expense, vexation and perhaps unfounded notoriety. It is an important public policy to weed out the frivolous and insubstantial cases at an early stage in the litigation, and still keep the doors of the federal courts open to legitimate claims." *Valley v. Maule*, 297 F.Supp. 958, 960–61 (D.Conn.1968).

The sole factual allegation in the present complaint regarding the First Amendment claim is the plaintiff's contention that, as a result of the defendants' statements, he had a subjective fear of re-prosecution, at least until such time as the dismissal of the information was declared to be "with prejudice." It is worth repeating that the plaintiff is not challenging the propriety of his original prosecution and conviction by a jury; rather he claims that the defendants' statements caused him to fear that he would be prosecuted in the future. In a case similar to the present one, the Supreme Court held that the allegation that the Army's gathering of information regarding civil disturbances had chilled the plaintiffs' First Amendment rights did not state a cause of action. *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972). The Court noted that nothing in *Dombrowski* altered the principle that in order to challenge governmental action, the plaintiff must demonstrate that " 'he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action . . . .' " *Id.* at 13, 92 S.Ct. at 2325, quoting from *Ex parte Levitt*, 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937). Instead of a direct injury, the plaintiff in the present case alleged only his subjective fear that he would be prosecuted again. As the *Laird* Court stated:

"Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm . . . ." *Id.* at 13–14, 92 S.Ct. at 2325–26.

Since the plaintiff was in fact never reprosecuted and since the dismissal of the information with prejudice forecloses any future prosecution, the plaintiff has suffered no harm and he can make no claim of future harm.

■ Having failed to make any factual allegations to support the conclusory claim that his First Amendment rights have been chilled, the plaintiff has failed to state a cognizable First Amendment claim. *Albany Welfare Rights Day Care Center v. Schreck*, 463 F.2d 620, 623 (2d Cir. 1972), cert. den. 410 U.S. 944, 93 S.Ct. 1393, 35 L.Ed.2d 611 (1973); *Cicero v. Olgiati*, 410 F.Supp. 1080 (S.D.N.Y.1976); *Bergman v. Stein*, 404 F.Supp. 287 (S.D.N.Y.1975); *Johnson v. Lee*, 281 F.Supp. 650, 656 (D.Conn.1968).

■ The plaintiff next argues that the defendants' statements have denied him his rights to a fair trial, to present evidence in his own behalf, and to confront his accusers, all in contravention of the Sixth Amendment. It has been held that the Sixth Amendment "is specifically limited to criminal prosecutions," *Hannah v. Larche*, 363 U.S. 420, 440 n.16, 80 S.Ct. 1502, 1513, 4 L.Ed.2d 1307 (1969), and since the plaintiff has not been put to a second trial, his claim that he has been deprived of his Sixth Amendment rights is without merit. *United States ex rel. Meadows v. State of New York*, 426 F.2d 1176, 1184 (2d Cir. 1970), cert. den. 401 U.S. 941, 91 S.Ct. 944, 28 L.Ed.2d 222 (1971); *Alred v. Henderson*, 406 F.2d 743, 744 (6th Cir. 1969), cert. den. 395 U.S. 947, 89 S.Ct. 2026, 23 L.Ed.2d 466 (1969); *Martin v. Merola*, 532 F.2d 191, 194 (2d Cir. 1976). The obvious rationale behind these decisions is that one cannot claim to have been denied a fair trial, if no trial has in fact taken place.

■ The plaintiff's final constitutional claim is that he has been deprived of his Eighth Amendment right to be free from cruel and unusual punishment. Aside from the fact that the complaint does not reveal

that the defendants were ever responsible for inflicting any punishment whatsoever on the plaintiff, this claim is deficient for the same reason that the Sixth Amendment claim is without merit. The Supreme Court recently ruled that:

> "An examination of the history of the [Eighth] Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 664, 97 S.Ct. 1401, 1409, 51 L.Ed.2d 711 (1977).

Since the plaintiff was not convicted of a crime, with the exception of the first trial, which is not at issue here, he has no claim under the Eighth Amendment.

### 3. The Pendent State Claims.

In his fifth cause of action the plaintiff alleges that the defendants' actions constitute defamation, invasion of privacy, and intentional infliction of emotional distress under Connecticut law, and he asks that this Court assume pendent jurisdiction over these state law claims. The anomaly of a federal court dismissing the federal aspects of the case and then retaining the state law claims under the doctrine of pendent jurisdiction has been noted elsewhere:

> " 'Where the federal element which is the basis for jurisdiction is disposed of early in the case, as on the pleadings, it smacks of the tail wagging the dog to continue with a federal hearing of the state claim.' " *McFaddin Express, Inc. v. Adley Corporation*, 346 F.2d 424, 427 (2d Cir. 1965), *cert. den.* 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966), quoting from A.L.I., Study of the Division of Jurisdiction Between State and Federal Courts (Tent.Draft No. 3, 1965) at p. 59.

Since none of the plaintiff's federal claims are meritorious, the pendent state claims will also be dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Gentile v. Wallen*, 562 F.2d 193, 198 (2d Cir. 1977).

### Conclusion

The crux of this action is the plaintiff's assertion that the defendants, through the release of McDonnell's investigative report and Leonard's public statements, have wilfully branded the plaintiff to be a murderer, with the knowledge that the accusation was untrue. The central question here is whether this action, which sets out a common law suit for defamation, should be heard in federal court, because of the circumstance that the persons who allegedly defamed the plaintiff were state officials. The Supreme Court addressed this question, and decisively answered it, in *Paul v. Davis*:

> "[The plaintiff] . . . has pointed to no specific constitutional guarantee safeguarding the interest [in reputation] he asserts has been invaded. Rather, he apparently believes that the Fourteenth Amendment's Due Process Clause should *ex proprio vigore* extend to him a right to be free of injury wherever the State may be characterized as the tortfeasor. But such a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." 424 U.S. at 700–01, 96 S.Ct. at 1160.

This is not to say that the plaintiff has no cause of action against the defendants. The plaintiff's allegations, if proven, would state "a classical claim for defamation, actionable in the courts of virtually every state." *Paul v. Davis, supra*, 424 U.S. at 697, 96 S.Ct. at 1159. However, the plaintiff has presented that claim in the wrong forum. Absent any federal element in his claim, his recourse is in the state courts. Of course, the Court expresses no opinion on whether the plaintiff will be able to prevail on his claim, should he elect to pursue his state remedies.

The defendants' motion to dismiss the action is granted. SO ORDERED.