Jeffery **MIMMS**

v.

**PHILADELPHIA NEWSPAPERS, INC., et al.**

**Civ. A. No. 71-2852.**

United States District Court, E. D. Pennsylvania.

Dec. 29, 1972.

Jeffery Mimms, pro se.

David H. Marion, Philadelphia, Pa., for newspaper defendants.

Michael Minkin, Asst. Atty. Gen., Philadelphia, Pa., for defendant Warden.

## MEMORANDUM OPINION AND ORDER

EDWARD R. BECKER, District Judge.

The plaintiff is an inmate at the Pennsylvania State Correctional Institution at Graterford. He filed this action pro se under 42 U.S.C. §§ 1983 and 1985 seeking $4 million in punitive damages for an alleged violation of his civil rights.[1] Paragraph 7 of the complaint sets forth the facts on which the cause of action is based:

> 7. On the 6 day of October, 1971, defendants maliciously published in the Philadelphia Daily News, of and concerning plaintiff the following matter:

> "PRISONERS WALK ALL OVER US ABOUT HALF THE TIME."

A picture of the plaintiff appears in full view thereunder, without his face being blackened out. The matter so published was untrue, false and defamatory.

Plaintiff alleges that the article and photograph were published without his permission and that they caused him humiliation and mental anguish, defamed him, invaded his privacy, and subjected him to unfair publicity. The defendants are the newspaper which published the story, its owner and officers, and the reporter and photographer who wrote the story and took the photograph. The superintendent of Graterford is also joined on the theory that he admitted the reporter and photographer to the institution. The complaint asserts a deprivation of the plaintiff's civil rights under color of law (the § 1983 claim) and a conspiracy to deprive him of equal protection of the laws (the § 1985 claim). The complaint is captioned ACTION TO RECOVER DAMAGES FOR LIBEL.

At the time the complaint was filed, we granted plaintiff leave to proceed in forma pauperis. The defendants have now moved us to dismiss the complaint for failure to state a claim upon which relief may be granted.[1a] We of course construe the complaint liberally, recognizing that pro se pleadings are to be judged by less stringent standards than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Marshall v. Brierley, 461 F.2d 929 (3rd Cir. 1972). Nevertheless, the motion to dismiss must be granted because, even giving plaintiff the benefit of the most liberal construction, we are constrained to hold that: (1) he has not stated a federal claim upon which relief can be granted; and (2) we lack jurisdiction as to his viable cause of action, a claim based on defamation and invasion of privacy. We will deal first with the § 1983 claim and then turn to the claim under § 1985.

There are two essential elements for a cause of action under § 1983:[2]

1. The complaint also prays for declaratory relief, but apparently only as an adjunct to the claim for damages.

1a. Defendant Johnson has also attacked the sufficiency of service of the complaint; however, in view of our disposition of the matter, we find it unnecessary to reach that question.

2. Section 1983 reads as follows:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(1) the conduct complained of must be under color of state law, and (2) such conduct must deprive the plaintiff of rights, privileges, or immunities secured to him by the Constitution and laws of the United States.[3] Mimms has failed to meet either of these criteria.

First, the complaint does not—and could not—allege that defendants other than the warden acted under color of law. They are newspaper people whose orbit is far from the governmental sphere and, by virtue of the first amendment, essentially insulated from it.

 Secondly, no deprivation of federally secured rights is alleged. Admittedly the complaint is framed in constitutional language.[4] However, the wrongs plaintiff asserts, namely libel and invasion of privacy, are not normally considered federally guaranteed rights.[5] A tort committed by a state official acting under color of law is not in and of itself sufficient to show an invasion of rights under the Civil Rights Act. United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84 (3rd Cir. 1969), cert. denied, 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970); Gittlemacker v. Prasse, 428 F. 2d 1 (3rd Cir. 1970). Of course, many successful civil rights complaints have been brought to redress tortious conduct. But those cases have all involved conduct that amounted to either deprivation of life or liberty without due process of law or cruel and unusual punishment. See, e. g., Howell v. Cataldi, 464 F.2d 272 (3rd Cir. 1972), where police officers beat an arrested man in the police station with fists, a blackjack, and a wooden club, directing blows to the head, stomach, and shins; Jenkins v. Averett, 424 F.2d 1228 (4th Cir. 1970), where a police officer recklessly shot an unarmed suspect and drove him to the police station before taking him to the hospital; Coleman v. Johnston, 247 F.2d 273 (7th Cir. 1957), where the denial of medical care to an unconvicted prisoner with gunshot wounds resulted in the amputation of his leg.

We have found only one case, York v. Story, 324 F.2d 450 (9th Cir. 1963), cert. denied, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964), in which an invasion of privacy was held to give rise to a cause of action under the civil rights laws. There, however, the conduct complained of was so outrageous as to shock anyone's conscience. The plaintiff alleged that the police had photographed her nude in indecent poses ostensibly in preparation of a criminal case but in reality to procure photographs for circulation among police department personnel for non-official purposes. The case before us is more akin to Baker v. Howard, 419 F.2d 376 (9th Cir. 1969), where a less egregious invasion of privacy—causing the broadcast of a false radio report implicating the plaintiff in a crime—was held not to give rise to a cause of action under § 1983. The *Baker* opinion cited and distinguished *York v. Story*.

 Neither is a defamation claim cognizable under the Civil Rights Act. *See* Church v. Hamilton, 444 F.2d 105 (3rd Cir. 1971) (per curiam) and Peoples Cab Co. v. Bloom, 472 F.2d 163 (3rd Cir., Oct. 20, 1972) (per curiam), dismissing civil rights actions for slander. Indeed, it is fundamental that where violation of purely state created rights is alleged, § 1983 is inapplicable.[6]

3. Howell v. Cataldi, 464 F.2d 272 (3rd Cir. 1972).

4. The complaint refers to the first and fourteenth amendments and to the equal protection clause.

5. Mimms asserts the right of privacy in the sense of the right to be free from publicity, not in the sense of the constitutional right to be free from unwarranted governmental intrusion, *see* Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Roe v. Wade, 314 F.Supp. 1217 (N.D.Tex.1970).

6. Of course, unequal treatment by state officials as to state-created rights is actionable as an abridgement of the federal right to equal protection of the laws. The factual allegations asserted in the complaint

A further reason requires dismissal of the complaint against the warden. Far from depriving prisoners of their rights by allowing newsmen to enter the prison, the warden had a constitutional obligation not to exclude them (subject, of course, to reasonable regulation of their comings and goings). *See* Washington Post Co. v. Kleindienst, 11 Crim.L.Rep. 2045 (D.D.C. Apr. 5, 1972) (Gesell, J.).

The allegations under § 1985(3) are also fatally defective.[7] To state a claim under that section one must assert: (1) a conspiracy by the defendants (2) to deprive the plaintiff of the equal protection of the laws or of equal privileges and immunities under the laws, (3) a purposeful intention to discriminate, and (4) resultant injury to person or property or deprivation of a right or privilege of citizenship. Huey v. Barloga, 277 F.Supp. 864 (N.D.Ill. 1967). Although Mimms asserts that a conspiracy existed, he has not alleged any facts which would tend to support the conclusory allegations that a conspiracy existed, or that the violations of his rights were the result of an invidious and intentional act on the part of the defendants designed to deprive him of the equal protection of the laws or equal privileges and immunities.[8] Indeed, the facts alleged themselves controvert such a conclusion.

The plaintiff has, however, stated a claim based on libel and invasion of privacy. Indeed, as noted earlier, he has labeled his complaint "ACTION TO RECOVER DAMAGES FOR LIBEL." Plainly, the proper forum for such an action is the state court; we have no jurisdiction over such a claim. Thus, although we have given the benefit of every doubt and have striven to find in his complaint the necessary allegations of a viable cause of action, the plaintiff's federal claims must be dismissed for lack of jurisdiction over the subject matter.

do not even remotely approach such a claim; as the caption of the complaint indicates, they essentially state a conventional libel action.

7. Section 1985(3) reads as follows:

(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

8. Even in a pro se civil rights case, *see* Haines v. Kerner, *supra*, the complaint must allege facts as well as conclusions. Esser v. Weller, 467 F.2d 949 (3rd Cir. 1972); Negrich v. Hohn, 379 F.2d 213 (3rd Cir. 1967).