**William Gordon BROOKS, Plaintiff,**

v.

**AMERICAN BROADCASTING COMPANIES, INC., et al., Defendants.**

**No. C81–706A.**

United States District Court, N.D. Ohio, E.D.

March 28, 1990.

---

John L. Wolfe, Akron, Ohio, for plaintiff.

---

Terence J. Clark, Squire Sanders & Dempsey, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge, sitting by designation.

This matter comes before the court on the motion of plaintiff William Brooks for leave to file an amended complaint, and defendant American Broadcasting Companies' motion for summary judgment. The parties having fully briefed the issues and the court having viewed the videotape of the broadcast in question, as well as the outtakes, the court will rule on these motions without conducting oral argument. *See* Local Civil Rule 3.01.

### I. MOTION TO AMEND THE COMPLAINT

This case arises out of an interview of Brooks by Geraldo Rivera recorded on April 1, 1980,[1] and the subsequent April 17, 1980, broadcast of excerpts of that interview in a report entitled "Injustice for All" on the ABC television program "20/20." The original complaint states that defendants lured Brooks to an Akron hotel on the fictitious premise that Brooks was to meet with his attorney and Rivera for a private meeting. Allegedly, before Brooks was able to enter the hotel, he was confronted on the street by Rivera, cameras, and recording equipment, at which time Rivera began to barrage Brooks with questions concerning Brooks's connection with a local judge, James Barbuto. Judge Barbuto had been indicted for various criminal acts which allegedly occurred while he was a probate judge for Summit County, Ohio. Rivera's questions related to allegations that Brooks was an "enforcer" or "hit man" for Judge Barbuto, and that Brooks had been instructed by Judge Barbuto to intimidate five prostitutes who were going to testify against Judge Barbuto.

In the complaint, Brooks stated two causes of action. Brooks alleged in Count

---

1. The original complaint states that the interview was conducted on April 7, 1980.

I that defendants invaded his privacy by portraying him in a false light,[2] this was done intentionally and in reckless disregard of his rights and, as a result, he had been humiliated, subjected to gossip, embarrassed, etc. In Count II, Brooks alleges that defendants maliciously, intentionally and, in reckless disregard of his rights, publicly slandered and libeled him in their 20/20 report by communicating the following defamatory false information:

1. Brooks was a friend of Judge Barbuto;
2. Brooks was employed by Barbuto as a "hit man";
3. Five witnesses testified that Brooks was a "hit man";
4. Brooks was a "pimp";
5. Brooks had been "betrayed";
6. Brooks was a "muscleman";
7. Brooks was a "street knowledgeable jive turkey."

In the complaint, Brooks asked for $20 million in compensatory damages and $20 million in punitive damages.

Brooks seeks to add three new allegations in his motion to amend the complaint. First, he asks to modify Count I to allege that defendants invaded his privacy by "commercially exploiting his identity," as well as placing him in a false light. Second, he asks to add a Count III, alleging that defendants violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510, *et seq.*, by using electronic, mechanical, or other devices to unlawfully intercept his statements to Rivera and by broadcasting the statements at a later date. Finally, Brooks wants to add a Count IV, alleging that defendants invaded his privacy only for the reason that he was a black male alleged to be the associate of a white judge who had sexual relations with black women, that defendants conspired among themselves to deprive Brooks of his constitutional right of privacy, and 42 U.S.C. §§ 1981, 1983, and 1985 were violated as a result.

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." However, there are certain circumstances when leave to amend should not be granted, and one such instance is when the amendment would be futile, *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) or, put another way, where the proposed amendment could not withstand a motion to dismiss. *Neighborhood Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir.1980). A motion to dismiss will be granted only if, treating all well-plead allegations as true, the non-movant will be unable to recover under the pleading in question.

Defendants object to these three proposed changes on the ground that the new claims could not withstand a motion to dismiss. The court will rule on these issues *seriatim.*

### A. Invasion of Privacy: Appropriation of Name or Likeness

Defendants argue that Brooks is foreclosed from making a claim for this type of invasion of privacy because the "invasion" occurred in the context of legitimate newsgathering activities and, in such cases, news organizations have a privilege against suits for invasion of privacy for appropriation of name or likeness. Brooks responds that no such privilege exists, and that this is a valid claim which is entitled to a trial by jury.

One who appropriates for their own use or benefit, the name or likeness of another, is subject to liability to the other for invasion of privacy. Restatement (Second) of Torts § 652C (1977); *Sustin v. Fee*, 69 Ohio St.2d 143, 431 N.E.2d 992, 993 (Ohio 1982). More than the mere incidental publication of a person's name or likeness is necessary. The defendant must have appropriated for his/her own use or benefit

**2.** The original complaint did not specify what type of invasion of privacy Brooks was alleging. However, briefing on this motion and the motion for summary judgment clearly indicates that all parties are of the opinion that the original complaint alleged "false light" invasion of privacy, and the court will proceed on that assumption.

the reputation, prestige, social or commercial standing, public interest, or other values of the person's name or likeness. *Jackson v. Playboy Enterprises, Inc.*, 574 F.Supp. 10, 13 (S.D.Ohio 1983); *Fogel v. Forbes, Inc.*, 500 F.Supp. 1081, 1088–89 (E.D.Pa.1980). Expanding on this concept, the Restatement provides:

> The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper, although it is not a philanthropic institution, does not become liable under the rule stated in this Section to every person whose name or likeness it publishes.

Restatement (Second) of Torts § 652(C), comment d (1977).

■ Drawing from the above Restatement language, it is clear that this particular type of claim for invasion of privacy is not applicable when a person's name or likeness is used in the context of the general news reporting. *Neff v. Time, Inc.*, 406 F.Supp. 858, 861 (W.D.Pa.1976); *Goldman v. Time, Inc.*, 336 F.Supp. 133, 140 (N.D. Cal.1971); *Gautier v. Pro–Football, Inc.*, 304 N.Y. 354, 107 N.E.2d 485, 488 (N.Y. 1952). As provided in comment d above, the fact that a news organization may operate for a profit does not alter this conclu-

sion, nor is it important whether a particular news program is merely for information or whether it intends to entertain as well. Once the character of a news program is established, "it is neither feasible nor desirable for a court to make a distinction between news for information and news for entertainment." *Jenkins v. Dell Publishing Co.*, 251 F.2d 447, 451 (3d Cir.1958), *cert. denied*, 357 U.S. 921, 78 S.Ct. 1362, 2 L.Ed.2d 1365 (1958).

■ Applying the above to the instant case, the court agrees with defendants that permitting this amendment to Count I is not called for, as this new claim could not survive a motion to dismiss. The 20/20 broadcast in question was a news broadcast similar in nature to an investigative report that might appear in a newspaper or magazine reporting on newsworthy matters. At the time of the broadcast, both Judge Barbuto and Brooks had been indicted for their alleged misconduct when Barbuto was a judge. The circumstances of Brooks's indictment for obstruction of justice while being involved with Judge Barbuto were the subject of Rivera's questions to Brooks. These matters were of newsworthy or legitimate concern to the public and fell within the responsibility of the press to report the operations of government. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492, 95 S.Ct. 1029, 1044, 43 L.Ed.2d 328 (1975). Indeed, a viewing of the broadcast in question demonstrates that Brooks was only one part of a larger news story being told and Rivera's interview of Brooks played a very minor role in that broadcast. At the very most, Brooks can only demonstrate that there was the incidental use of his name or likeness in a televised news show, and that simply is not enough to support a claim for this specific type of invasion of privacy.

Brooks argues that according to *Zacchini v. Scripps–Howard Broadcasting Co.*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977), there is no federal constitutional privilege which shields news organizations from tort liability and, as such, he should not be prevented from asserting an appropriation claim for invasion of privacy. The

court agrees that *Zacchini* states this proposition, but does not agree that this prevents the court from denying Brooks's motion. The court is not holding the defendants are "privileged" such that they are excused from any tort they have committed; rather, the court is holding that under the circumstances alleged in Brooks's complaint, no tort has been committed because no actionable appropriation of Brooks's name or likeness occurred as defined in the Restatement. The amendment will not be permitted.

### B. Title III of the Omnibus Crime Control and Safe Streets Act of 1968

■ Defendants argue that because Brooks had no reasonable expectation that his statements would not be electronically intercepted when they were made, there was no "oral communication" as defined under Title III and, without such a communication, there can be no violation of Title III. In addition, defendants contend that even if such a communication did exist, since they were but one party to that communication and chose to record it, there can be no violation of Title III. Brooks responds that he did have a reasonable expectation of non-interception, or at least this is a question for a jury to decide and, since defendants recorded the conversation for the purpose of committing criminal, tortious, and other injurious acts, the "one-party consent" exception they rely upon is not applicable in this case.

Under Title III it is unlawful to intercept, disclose, or use any wire or oral communication. *See* 18 U.S.C. § 2511(1). An oral communication is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation...." 18 U.S.C. § 2510(2). However, if a person is acting under color of state law and is a party to the communication in question, the interception of that communication by that person is not unlawful. 18 U.S.C. § 2511(2)(c). If a person is not acting under color of state law but is a party to the communication, their interception of the communication will not be unlawful unless the interception was for the "purpose of committing any criminal or tortious act ... or for the purpose of committing any other injurious act." 18 U.S.C. § 2511(2)(d) (the "other injurious act" language was deleted by Congress in 1986, but was in the statute when the complaint and proposed amended complaint were filed). Accordingly, there must be an oral communication as defined in Title III for liability to be imposed on a party to an oral communication for intercepting that communication, and the exceptions from 18 U.S.C. § 2511(2) must not apply (there are other enumerated exceptions under 18 U.S.C. § 2511(2), but only (c) or (d) are potentially applicable here).

In light of the facts alleged in the amended complaint regarding the presence of an oral communication as defined by the Act, the court cannot conclude as a matter of law that Brooks could not have had a reasonable expectation that his statements would not be intercepted. While the Rivera conversation did take place on a public street, there are questions as to whether Brooks knew the conversation was being recorded, particularly because Brooks had met previously with Rivera in private and, according to the complaint, Brooks was lured to the hotel on the representation that he and his attorney would be meeting with Rivera. While the court has serious doubts as to whether Brooks could have had an expectation of total privacy, the court is also mindful that the Sixth Circuit has noted that there may be circumstances where there is no expectation of total privacy but there is still a reasonable expectation of non-interception, as one is not aware of the specific nature of another's invasion of their privacy. *Boddie v. ABC*, 731 F.2d 333, 338–39 n. 5 (6th Cir.1984) (*citing Bianco v. ABC*, 470 F.Supp. 182, 185 (N.D.Ill. 1979)). It is not appropriate for the court to conclude at this time that there was no reasonable expectation of non-interception on Brooks's part, therefore, the alleged absence of an "oral communication," as defined by the Act, will not preclude permission to amend the complaint.

Before dealing with the possible applicability of exceptions to liability, the court

must first address a general argument made by Brooks against the application of these exceptions. He argues that Rivera's interview was essentially a one-sided conversation and that the one party doing all of the talking should not be able to take advantage of the one-party consent exceptions of 18 U.S.C. § 2511(2)(c) and (d). However, Brooks supplies no authority or legislative history to support this novel argument, and the court can find nothing in Title III or its history that requires meaningful participation in the communication by the non-consenting party for the one-party consent exceptions to have effect. Such a requirement would do more harm than good. Courts would be stalled trying to determine how much participation is necessary, and there would be serious vagueness problems with such a requirement similar to those that lead the Sixth Circuit to conclude that the "other injurious acts" language of 18 U.S.C. § 2511(2)(d) was unconstitutionally vague. *Boddie v. ABC,* 881 F.2d 267, 270–72 (6th Cir.1989).

Turning to the one-party consent exceptions, if defendants were acting under color of state law, the Title III claim would not be permitted because defendants were party to the oral communication in question, and pursuant to 18 U.S.C. § 2511(2)(c), this is an absolute bar to liability. For discussion purposes only, the court will assume that the parties are taking the position that defendants did not act under color of state law as to Title III. The Title III claim will be permitted if the amended complaint demonstrates that the interception of the oral communication was for the purpose of committing criminal or tortious act. It is unnecessary for the court will not consider the "other injurious acts" language of 18 U.S.C. § 2511(2)(d). *Boddie,* 881 F.2d at 270–72.

■ Brooks argues that 47 U.S.C. § 502 makes it illegal to violate any regulation issued by the Federal Communications Commission (FCC). 47 C.F.R. § 2.701(a) states that "[n]o person shall use ... a

device required to be licensed by § 301 of the Communications Act of 1934 ... for the purpose of overhearing or recording the *private conversations* of others unless such use is authorized by all of the parties engaging in the conversation." (Emphasis added). Brooks concludes that defendants used licensed devices to record Brooks's comments to Rivera without his consent, therefore, defendants' interpretation was for the purpose of committing a criminal act.[3] However, the emphasized language requires the conversation in question to be private and the court has already noted that the Rivera/Brooks conversation that took place in public on an Akron street. This conclusion is further supported by paragraph seventeen of the FCC report on this specific regulation when it was promulgated:

> The rules adopted herein should not impede broadcast programming any more than the prohibitions against wiretapping in Section 605 have impeded programming in the past. The proposed rules specifically refer to "private conversations." The interpretations applied to that phrase by the courts indicate that the phrase does not embrace conversations carried on within earshot of others not engaged in the conversation. Thus, conversations in public and semi-public places or in any other place where persons may reasonably expect their conversations to be overheard would not be protected by the rules.

*In the Matter of Amendment of Parts 2 and 15 of Commission's Rules to add regulations prohibiting the use of radio devices for eavesdropping purposes,* No. 15262 (FCC, Feb. 28, 1966) (footnote omitted). Consequently, no interception for the purpose of committing a criminal act can be demonstrated here. Unless there is an interception for the purpose of committing a tortious act, the one-party consent exception of 18 U.S.C. § 2511(2)(d) will apply.

■ Brooks argues that there has been an interception for the purpose of commit-

---

**3.** Although this allegation is not found in the amended complaint, for the purposes of econo-

my, it will be addressed by the court.

ting a tortious act. Brooks argument is as follows: Ohio Rev.Code Ann. § 1.16, states that civil actions can be maintained to recover damages caused by the violation of a criminal statute. Ohio Rev.Code Ann. § 2933.58 (repealed 1987) provides:

(A) Except as provided in this section, or as permitted under the laws of the United States, no person shall willfully, surreptitiously, and by means of any device listen to, transmit, amplify, or record a private oral communication carried on in circumstances which reasonably indicate that the parties thereto desire it to be confined to them, and no person shall willfully disclose or willfully use or attempt to use any information, knowing or having reasonable cause to believe such information was obtained in violation of this section.

Whoever violates this section shall be fined not more than one thousand dollars or imprisoned not less than one or more than three years, or both.

(B) This section does not apply to communications by or through a line, cable, or wire under the control of a telegraph or telephone company, or to communications in which at least one party thereto, in order to prevent a crime or bring an offender to justice, has consented in advance to such communications being listened to, transmitted, amplified, or recorded, or to communications carried on publicly or under circumstances in which the parties thereto might reasonably expect such communications to be listened to, transmitted, amplified, or recorded.

Brooks alleges that defendants violated this Ohio statute and pursuant to Ohio Rev.Code Ann. § 1.16, such a violation is a tortious act.

The court does not agree with Brooks. In its very first sentence, Ohio Rev.Code Ann. § 2933.58 states that if an interception is permitted under United States law the statute will not be violated. In essence, this statute defers to federal law, yet Brooks wishes to use it to establish the legality or illegality of an interception under federal law. This is not logically sound because it results in circular reasoning; i.e., Title III is violated if § 2933.58 is violated but § 2933.58 is violated only if Title III is violated. The facts as alleged in the amended complaint do not establish a violation of this statute. Part (a) of the statute applies only to private communication and part (b) provides that § 2933.58 does not apply "to communications carried on publicly or under circumstances in which the parties thereto might reasonably expect such communications to be listened to." The Rivera/Brooks conversation, taking place on the street and not in private, certainly fits the scenario in part (b) and was not a private communication.

█ Accordingly, the facts as alleged in the amended complaint cannot establish that defendants' recorded communication was for the purpose of committing a criminal or tortious act. Therefore, the one-party consent exception of 18 U.S.C. § 2511(2)(d) applies, and defendants cannot be held liable for a violation of Title III. Brooks will not be permitted to add Count III to his amended complaint.

## C. Civil Rights Claims

Defendants argue that all of Brooks's proposed civil rights allegations are too conclusory to be permitted, no state action can be established based upon the facts as alleged, and there is an absence of a violation of any federally-guaranteed right. Brooks responds that all of the necessary elements have been satisfied and the amended complaint alleges a deprivation of his constitutional right of privacy. The court will discuss each civil rights claim separately below but notes at the outset that all three statutory claims rely on the following language from paragraph 22 of the proposed amended complaint:

The defendants' broadcast of the plaintiff and the use of photographs of his person and recordings of his voice, violated the plaintiff's constitutional right to privacy. Defendants invaded the plaintiff's privacy only for the reason that he was a black male alleged to be the friend and associate of a white male judge, who had had sexual relations with black women. Furthermore, defendants conspired

among themselves to deprive the plaintiff of his constitutional right of privacy acting under color of Ohio law and custom, thereby violating 42 U.S.C. §§ 1981, 1983 and 1985, all to the plaintiff's damage, justifying, in addition to compensatory and punitive damages, a reasonable allowance for the plaintiff's attorney fees as part of his costs.

### 1. 42 U.S.C. § 1983

This statute provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Accordingly, in order to state a claim under this statute there must be allegations of a deprivation of rights secured by federal law and this deprivation occurred under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Jones v. Duncan*, 840 F.2d 359, 361–62 (6th Cir.1988).

The court concludes that the facts as alleged in the amended complaint fail to implicate a federal right. Notwithstanding the conclusory allegations of a deprivation of his constitutional right to privacy in paragraph 22 of Brooks's amended complaint, the facts alleged indicate that what is really implicated are Brooks's rights to be free from defamation and the invasion of his privacy. These rights are not considered federally guaranteed rights but rather, if they exist at all, are state rights which cannot form the basis of a section 1983 action. *Rosenberg v. Martin*, 478 F.2d 520, 524–25 (2d Cir.1973); *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); *Reilly v. Leonard*, 459 F.Supp. 291, 299–300 (D.Conn.1978); *Mimms v. Philadelphia Newspapers, Inc.*, 352 F.Supp. 862, 865 (E.D.Pa.1972). *See also Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). As aptly stated in *Reilly:*

It must be recognized, however, that the "right to privacy" is a generic term which encompasses two entirely different interests. First, there is the right to be free from substantive regulation by the government in certain areas of one's life. Second, there is the right to be free from unwarranted and unwanted publicity about one's affairs. It is only the first of these interests that is protected by the Constitution. The right to be free from unwanted publicity, which is the privacy interest implicated in the present suit, is protected, if at all, by the common law; and because it is not a federal right, a 1983 action will not lie for its invasion. As the Supreme Court has noted, "the protection of a person's *general* right to privacy—his right to be let alone by other people—is, like the protection of his property and of his very life, left largely to the law of the individual States."

*Reilly*, 459 F.Supp. at 299–300 (citations omitted). Brooks argues that he is alleging much more than this. He states that implicit in paragraph 22 are allegations of a deprivation of his rights to seek and hold employment, to associate with whomever he wishes, to have a fair trial without undue publicity, and to be free from a "badge of infamy." The court finds none of these allegations either explicitly or implicitly presented in the proposed amended complaint. Consequently, the first element of a section 1983 claim is missing in proposed Count IV.

Not only is the first element of a section 1983 missing, the second element is missing as well. It is true that private parties can act under color of state law when they willfully participate in joint action with state officials. *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Adickes*, 398 U.S. at 152, 90 S.Ct. at 1605. However, paragraph 22 of the proposed amended complaint fails to

allege such action in several respects. First, there are only the most broad and conclusory allegations that defendants acted with state officials to violate Brooks's federal rights and such conclusory state action allegations cannot survive a motion to dismiss. *Glaros v. Perse*, 628 F.2d 679, 685 (1st Cir.1980); *Brown v. Chaffee*, 612 F.2d 497, 501 (10th Cir.1979); *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977); *Kurzawa v. Mueller*, 545 F.Supp. 1254, 1262–63 (E.D.Mich.1982), *aff'd*, 732 F.2d 1456 (6th Cir.1984). Second, even if the court accepted the assertions made by Brooks in his briefs on the instant motion, the result would not be different. Aside from further conclusory allegations made, the only substantive point made by Brooks is that defendants had access to official investigatory materials in preparing their broadcast. News reporters often have access to official reports and documents to aid them in investigating and preparing a story, yet that alone does not convert these acts into state action. To hold otherwise would be to render many actions by news agencies state actions and this would dilute the historic disassociation between the news media and the government. *See Chicago Joint Board v. Chicago Tribune Co.*, 435 F.2d 470, 474 (7th Cir.1970), *cert. denied*, 402 U.S. 973, 91 S.Ct. 1662, 29 L.Ed.2d 138 (1971). The facts as alleged merely demonstrate defendants were acting as any news reporting organization typically does and this does not constitute state action. Accordingly, Brooks's section 1983 amendment will not be permitted.

### 2. 42 U.S.C. § 1981

This provision states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

While Brooks does not specify under which of the several clauses of the statute he wishes to make his claim, the facts as alleged in the amended complaint indicate that it must be either the second (equal benefits) or the third (like punishment). Defendants also make this assumption in their briefs and Brooks has not contradicted this assumption.

There are several problems with the section 1981 allegation requiring denial of the motion to add the claim. First, while section 1981 contains no explicit state action requirement, courts have interpreted the second and third clauses to require state action:

The words "full and equal benefit of all *laws and proceedings* for the security of persons and property" (emphasis supplied), on the other hand, suggest a concern with relations between the individual and the state, not between two individuals. The state, not the individual, is the sole source of law, and it is only the state acting through its agents, not the private individual, which is capable of denying to blacks the full and equal benefit of the law. Thus, while private discrimination may be implicated by the contract clauses of section 1981, the concept of state action is implicit in the equal benefit clause. The like punishment clause may be read in the same way.

*Mahone v. Waddle*, 564 F.2d 1018, 1029–30 (3d Cir.1977); *cert. denied sub nom. Pittsburgh v. Mahone*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978). *See also Sharre Tefila Congregation v. Cobb*, 785 F.2d 523, 526 (4th Cir.1986), *rev'd in part on other grounds*, 481 U.S. 615, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987); *Spencer v. Casavilla*, 717 F.Supp. 1057, 1059 (S.D.N.Y.1989); *Rochon v. Dillon*, 713 F.Supp. 1167, 1172 (N.D.Ill.1989). The court agrees with this analysis. For the reasons set forth above, the court finds that state action cannot be alleged adequately. Second, the section 1981 allegations in paragraph 22 of the proposed amended complaint are too vague and conclusory, failing to specifically identify which laws Brooks is being denied full and equal benefits. Such conclusory allegations cannot survive a motion

to dismiss and, therefore, the section 1981 claim will not be permitted. *See German v. Killeen*, 495 F.Supp. 822, 827 (E.D.Mich. 1980).

### 3. 42 U.S.C. § 1985

Brooks's proposed amended complaint does not indicate which of the subparts of section 1985 he is relying upon. However, briefing on the instant motion indicates that Brooks relies upon subparts two and three, which read, in pertinent part:

**(2) Obstructing justice; intimidating party, witness, or juror.**

[I]f two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

**[or]**

**(3) Depriving persons of rights or privileges.** If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

The allegations of the proposed amended complaint are not sufficient to require the court to grant the request. First, section 1985 requires that a conspiracy be established by the defendants, and the existence of a conspiracy must be pled in detail in order for section 1985 claims to survive a motion to dismiss. *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir.1972); *German*, 495 F.Supp. at 829. Here, paragraph 22 of the proposed amended complaint contains only surface allegations of a conspiracy, and these allegations fall far short of what is necessary. Second, there must be an assertion of a violation of some federally protected right, such as equal protection of the laws, in order to state a valid claim under section 1985(3). *Great American Federal Sav. & Loan v. Novotny*, 442 U.S. 366, 376, 99 S.Ct. 2345, 2351, 60 L.Ed.2d 957 (1979); *Holmes v. Finney*, 631 F.2d 150, 154 (10th Cir.1980); *Nieto v. United Auto Workers Local 598*, 672 F.Supp. 987, 991 (E.D.Mich.1987); *Smith v. Butler*, 507 F.Supp. 952, 954 (E.D.Pa.1981). As discussed earlier under section 1983, the proposed amended complaint involves the alleged violation of state rights only, therefore, the section 1985(3) claim cannot survive a motion to dismiss.

### D. Conclusion

For the reasons stated above, the court finds that none of the proposed amendments to the complaint can withstand a motion to dismiss and, therefore, the motion for leave to file an amended complaint is denied.

## II. MOTION FOR SUMMARY JUDGMENT

With the denial of Brooks's motion to amend, there remains two counts found in the original complaint which are both addressed in defendants' motion for summary judgment. Count I alleges false light invasion of privacy, and Count II alleges libel and slander. The specific allegations made under each count have been set out above under the discussion of Brooks's motion to amend.

Federal Rule of Civil Procedure 56 requires that summary judgment should be granted when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *McKee v. Cutter Laboratories, Inc.*, 866 F.2d 219, 220 (6th Cir.1989). All inferences drawn from the facts must be viewed in a light most favorable to the non-moving party, *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Roland v. Johnson*, 856 F.2d 764, 769 (6th Cir.1988), and there is no genuine issue unless there is sufficient evidence favoring the non-movant for a jury to return a verdict for that party. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *McKee*, 866 F.2d at 220. The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion, there must be no genuine issue of *material* fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10; *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154, 1161 (6th Cir.1988). Once the movant presents evidence sufficient to support the motion under Rule 56(c), the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986).

### A. False light invasion of privacy

 One way in which a person's privacy can be invaded is by a defendant casting that person in a false light. *Angelotta v. ABC*, 820 F.2d 806, 807 (6th Cir.1987); Restatement (Second) of Torts 652E (1977). Defendants argue that this specific tort is not recognized in Ohio, while Brooks counters that there has been no definitive statement by a court whether this tort is recognized in Ohio or not. The court agrees with defendants. In *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666, 669–70 (Ohio 1983), the Ohio Supreme Court stated that it has not recognized a cause of action for invasion of privacy under the "false light" theory of recovery, and found no rationale to do so at that time. Any doubt on this issue was resolved in *Angelotta*, where the Sixth Circuit stated that the false light tort is not recognized in Ohio. *Angelotta*, 820 F.2d at 808. Accordingly, the court finds that Count I makes a tort claim which has not been recognized in Ohio and the court will, therefore, dismiss Count I.

### B. Libel and slander

Defendants make two arguments concerning Count II of the complaint. First, defendants contend that the seven specific statements which Brooks identifies as defamatory in Count II are true. Second, defendants argue that Brooks is libel proof under the several different branches of a doctrine that have been developed by the courts. Brooks has responded that there is a genuine issue of fact as to whether the statements in question are true, and also there is an issue as to whether he is libel proof or not. The parties have submitted numerous exhibits pertaining to the events surrounding the Judge Barbuto affair, its underlying facts, what was or was not eventually proved or disproved, and how all of this relates to the seven statements at issue. In addition, a videotape of the 20/20 broadcast in question, as well as the outtakes, has been submitted to the court. The court has viewed the tapes and examined all of the exhibits submitted.

 The court finds that there remain genuine issues of material fact with respect to defendants' first argument and, therefore, summary judgment is not appropriate at this juncture. However, this does not fully answer the question of the defendants' claim the plaintiff is "libel proof," even though under the facts that are not in dispute, there may be an issue as to whether the statements may be true. The libel-proof doctrine, which is a complete defense, in law, to a claim of libel consists of two parts: (1) a showing that the plaintiff's reputation was so besmirched as a result of other events at the time of the alleged libelous statement, that the plaintiff's reputation would not, by the statement, be fur-

ther damaged and plaintiff would not be entitled to recover more than minimal damages; and (2) the allegedly libelous statements were published as a part of an effort to inform the public about the facts through the press, radio, television, or other type of publication. The principle behind this doctrine is the need to balance the rights of persons who are informing the public under the protection of the first amendment against the privacy rights of individuals or regarding common law libel. In such a case, where a person's reputation is already so bad that further statements do not create further damage, it is clear that the fine lines developed by the common law regarding libel cannot be the basis for a viable libel action when the defendant is reporting facts through the media to inform the public.

Under this doctrine where, by virtue of a plaintiff's reputation, it is unlikely that he/she will be able to recover anything more than nominal damages for any false statements made, the presence of first amendment considerations warrant dismissal of that plaintiff's claim. This doctrine protects the dissemination of news and views on public issues from burdensome litigation commenced by plaintiffs having no likelihood of significant recovery. This approach and its underlying rationale is best described in the following discussion in *Wynberg v. National Enquirer, Inc.*, 564 F.Supp. 924, 927–28 (C.D.Cal.1982):

> Determining the appropriate accommodation between the law of defamation and the freedoms of speech and press protected by the First Amendment is never easy nor finished. Consequently, defamation cases have continually arisen. But past federal and state decisions have given trial courts several flexible rules as an aid in resolving these disputes. When, for example, an individual engages in conspicuously anti-social or even criminal behavior, which is widely reported to the public, his reputation diminishes proportionately. Depending upon the nature of the conduct, the number of offenses, and the degree and range of publicity received, there comes a time when the individual's reputation

for specific conduct, or his general reputation for specific conduct, or his general reputation for honesty and fair dealing is sufficiently low in the public's estimation that he can recover only nominal damages for subsequent defamatory statements.

First Amendment considerations of free press and speech, promoting society's interest in uninhibited, robust, and wide-open discussion, must prevail over an individual's interest in his reputation in such cases. An individual who engages in certain anti-social or criminal behavior and suffers a diminished reputation may be "libel proof" as a matter of law, as it relates to that specific behavior. By extension, if an individual's general reputation is bad, he is libel proof on all matters. Criminal convictions with attendant publicity may make an individual libel proof.

(Citations omitted).

■ One federal circuit court and several federal district courts have applied the libel-proof doctrine to libel and slander cases. *Guccione*, 800 F.2d at 303; *Cardillo v. Doubleday & Co.*, 518 F.2d 638, 639 (2d Cir.1975); *Wynberg*, 564 F.Supp. at 927–28; *Ray v. Time, Inc.*, 452 F.Supp. 618, 622 (W.D.Tenn.1976), *aff'd*, 582 F.2d 1280 (6th Cir.1978). One federal circuit has declined to adopt this approach. *Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1568 (D.C.Cir.1984), *vacated on other grounds*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While there has not been an Ohio decision that has expressly adopted or rejected this approach, the court agrees with the rationale and analysis behind the libel-proof doctrine as expressed in *Wynberg* and other cases and will, therefore, apply this doctrine to the instant case. In doing so, the court recognizes that this doctrine is narrow and must be applied carefully. *Guccione*, 800 F.2d at 303; *Buckley v. Littell*, 539 F.2d 882, 889 (2d Cir.1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977).

■ Examining the uncontroverted facts concerning Brooks prior to the 20/20

broadcast, the court concludes that he is libel proof, and Count II should be dismissed. First, Brooks has a long criminal history in Akron. From 1960 until the time of the broadcast, Brooks was arrested over twenty times by the Akron police for a broad range of offenses, including disorderly conduct (1969), destruction of property (1970), drug abuse (1976), and felonious assault (1979), aggravated menacing (1975 and 1978). In addition, Brooks was convicted of breaking and entering in 1964, sentenced to three years probation; grand larceny in 1965, sentenced to one to fifteen years incarceration for probation violation; first degree manslaughter in 1971, sentenced to one to twenty years incarceration; and carrying a concealed, loaded revolver/carrying a weapon under disability in 1976, sentenced to two to ten years incarceration. Several of these convictions, including the breaking and entering conviction, the 1976 weapons convictions, and the manslaughter conviction which appeared in four different articles, were covered by a local newspaper, the Akron Beacon Journal.

Taken as a whole, Brooks's oft-publicized criminal history demonstrates that Brooks's reputation in Akron at the time of the 20/20 broadcast was severely tarnished. Indeed, Brooks himself testified at his deposition that employment had been very difficult with potential employers refusing to offer him a job because of his criminal record. Moreover, many of Brooks's past arrests, specifically for the felonious assault and aggravated menacing, and his past criminal convictions for manslaughter and carrying concealed weapons, are for conduct which is similar in nature to that of the alleged libelous comments made by Rivera during the 20/20 broadcast. These comments alleged that Brooks was an enforcer for Judge Barbuto by threatening physical violence to those who would not cooperate. Therefore,

any harm to Brooks's reputation from the 20/20 broadcast was minimal.

Second, aside from Brooks's criminal record, his reputation in Akron at the time of the 20/20 broadcast was also poor due to coverage of him in the Akron Beacon Journal. Apart from the entire Judge Barbuto matter, the Akron Beacon Journal not only covered several of Brooks's criminal convictions, it also reported Brooks's involvement in an Akron slaying in 1979. After the arrest of Judge Barbuto in March of 1980, seven different articles appeared in the Akron Beacon Journal mentioning a "hitman" who had been instructed by Judge Barbuto to intimidate potential witnesses against him. Finally, on April 8, 1980, the day after Brooks was indicted for carrying a concealed weapon under disability, intimidation of witnesses, and obstruction of justice in connection with the Judge Barbuto matter, the Akron Beacon Journal reported the indictment and identified Brooks as "the man police suspect as being the so-called 'hit-man' in the sex case involving Probate Judge James V. Barbuto." This article was published *only ten days* before the 20/20 broadcast. Brooks himself testified at his deposition that in late March of 1989 he told Rivera that his life had been ruined by the Akron police investigation of him. He also testified that his life had been ruined by his having been brought before the grand jury handling the Judge Barbuto matter and the resulting articles that appeared in the Akron Beacon Journal.

Taken together, Brooks's criminal history and the reports appearing just prior to the 20/20 broadcast about his alleged involvement in the Judge Barbuto matter, provide the court with convincing evidence that his reputation was so tarnished at the time of the 20/20 broadcast that the most he could receive in this action would be nominal damages.[4] Therefore, under the libel-proof doctrine discussed above, Count II of the complaint must be dismissed.

4. The only evidence provided by Brooks as to the question of his reputation is his own affidavit stating his belief that he did not have a bad reputation in Akron prior to the 20/20 broadcast, and the affidavit of Lawrence Smith who was representing Brooks in the Judge Barbuto matter stating that he never had reason to doubt Brooks's word. This evidence falls far short of establishing a genuine issue of fact as to Brooks's reputation especially in light of the uncontroverted evidence of Brooks's criminal history and the press coverage of his actions.

## CONCLUSION

The court finds that Count I of the complaint is dismissed because it asserts a cause of action not recognized in Ohio, and Count II is dismissed for the reason that Brooks is libel proof. Accordingly, defendants' motion for summary judgment is GRANTED, and the case is DISMISSED with prejudice.